**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CITY OF EVANSTON, *et al.*,

Plaintiffs,

v.

MONSANTO COMPANY, *et al.*,

Defendants.

Case No. 23-cv-03140

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are several Illinois municipalities[1] (the "Municipalities") that filed suit in the Circuit Court of Cook County against Defendants Monsanto Co., Solutia Inc., and Pharmacia LLC (collectively, "Monsanto") and Defendant Univar Solutions Inc. ("Univar") and seek damages due to the contamination of their jurisdictions with polychlorinated biphenyls ("PCBs"). [1-1] ("Compl."). The Municipalities move to remand the case to the Circuit Court of Cook County, Illinois. For the reasons stated below, the Municipalities' motion to remand [17] is granted.

## I. Background

The Municipalities allege that PCBs were manufactured by Old Monsanto, the predecessor to Monsanto, and distributed by Univar. *Id.* ¶ 2. Defendants sold a large volume of commercial PCBs and PCB-containing products to various customers in and around the Municipalities before PCBs were banned in the late 1970s. *Id.* ¶¶ 1,

[1] Plaintiffs are the City of Evanston, the City of Lake Forest, the City of North Chicago, the City of Zion, the Village of Beach Park, the Village of Glencoe, the Village of Lake Bluff, the Village of Winnetka, and the Village of Winthrop Harbor. [1-1].

114. The Municipalities further allege that because of Defendants' sales of PCB products, there is widespread contamination in and around the Municipalities, including the Municipalities' separate storm water systems ("MS4s"). *Id.* ¶¶ 1, 6. As a result of PCB contamination in and around Lake Michigan, the Illinois Environmental Protection Agency promulgated a regulatory requirement, known as a "Total Maximum Daily Load," for PCBs for the portion of Lake Michigan that abuts Illinois ("Lake Michigan TMDL"). *Id.* ¶¶ 6, 119. Because each Municipality's MS4 discharges stormwater into Lake Michigan, under the Lake Michigan TMDL, each Municipality is required to reduce PCB discharges in its stormwater by approximately 99.6%. *Id.* ¶¶ 6, 12. The Municipalities must do this by developing and implementing Best Management Practices ("BMPs") by which the Municipalities eliminate sources of PCBs entering stormwater and capture flows of unfiltered stormwater before this stormwater reaches Lake Michigan. *Id.* ¶ 119. The Municipalities seek damages from Defendants to pay for these BMPs, which include modifications of their MS4s. *Id.* ¶ 5. The Municipalities bring claims under Illinois law against all Defendants for strict liability design defect, negligent failure to warn, negligence, public nuisance, private nuisance, and trespass. *Id.* ¶¶ 122–65.

On May 18, 2023, Defendants removed this action from state to federal court. [1] ("Notice of Removal"). Defendants' Notice of Removal asserts the action is removable on three grounds: (1) "the Municipalities' claims arise, in whole or in part, on a federal enclave and under federal law"; (2) "this action is removable based on diversity of citizenship" because "all non-fraudulently joined parties are completely

diverse" and "claims against Univar are subject to dismissal under the Illinois Distributor Statute"; and (3) "the Municipalities' claims necessarily invoke federal common law." Notice of Removal at 2–3. The Municipalities have moved to remand arguing that removal was improper on all three grounds asserted by Defendants. [18] at 1–2.

## II. Legal Standard

Federal courts are "courts of limited jurisdiction" with only "that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, there is "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts." *Morris v. Nuzzo*, 718 F.3d 660, 670 (7th Cir. 2013). The removal statute must be interpreted "narrowly" and doubts must be "resolv[ed] . . . in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). A defendant seeking to remove a case has "the burden of establishing federal jurisdiction." *Id.*

## III. Analysis

As a preliminary matter, the Municipalities highlight a recent decision by another court in this district that rejected Defendants' grounds for federal jurisdiction and remanded the case to state court. [29]; *City of Chicago v. Monsanto, et al.*, 1:23-cv-15357, ECF No. 29 (N.D. Ill. Feb. 12, 2024). As discussed more below, the Court disagrees with Defendants that this case requires a different result. [31]. Like the court in *City of Chicago v. Monsanto*, this Court rejects Defendants' arguments that

(1) the Municipalities' claims arise on a federal enclave; (2) Defendant Univar, the only non-diverse defendant, was fraudulently joined; and (3) the Municipalities' claims implicate federal common law.

**A. Federal Enclave Jurisdiction**

Defendants first argue that removal is proper because the Municipalities' claims arise, in whole or in part, on a federal enclave. [22] at 4–9. "State-law actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."[2] *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271 (10th Cir. 2022) (cleaned up). "These enclaves include numerous military bases [and] federal facilities." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012). Courts have held that federal enclave jurisdiction "generally requires that all pertinent events take place on a federal enclave." *Suncor Energy*, 25 F.4th 1238 at 1271 (cleaned up); *accord Rhode Island v. Shell Oil Prod. Co.*, 35 F.4th 44, 58 (1st Cir. 2022); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 219 (4th Cir. 2022). "A claim must allege that an injury occurred on a federal enclave or that an injury stemmed from conduct on a federal enclave." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022) (citation omitted). Additionally, "the

[2] The Enclave Clause of the United States Constitution grants the United States exclusive jurisdiction over any parcel of land ceded to the Federal Government "for the Erection of Forts, Magazines, Arsenals, dock yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17.

connection between injuries and conduct must not be too attenuated and remote." *Id.* (cleaned up).

Defendants contend that the Municipalities' claims "implicate" PCBs discharged from the Naval Station Great Lakes ("Naval Station") because "the presence of PCBs in Lake Michigan . . . is the reason the Municipalities must undertake costly MS4 upgrades." [22] at 8. The parties do not dispute that the Naval Station is a federal enclave. However, the Municipalities' complaint does not contain allegations concerning Defendants' conduct at the Naval Station, and the Municipalities expressly disclaimed any damages related to "any federal lands, federal enclaves, or any federal interests in any property or resources." Compl. ¶ 11; *Suncor Energy*, 25 F.4th at 1271–72 (finding "no viable claim of federal enclave jurisdiction" where plaintiffs disclaimed any damages from injuries occurring on federal land).

Even if the Court were to accept Defendants' argument that discharges of PCBs from the Naval Station contributed to the establishment of the Lake Michigan TMDL, "the connection between injuries and conduct must not be too attenuated and remote." *Sunoco LP,* 39 F.4th at 1111 (cleaned up). Put differently, "federal-question jurisdiction is not conferred merely because *some* of Defendants' activities occurred on military installations." *BP P.L.C.*, 31 F.4th at 217–18. Here, the Municipalities seek damages to remediate their *own storm sewer systems*. Compl. ¶ 5–6. More specifically, the Municipalities must reduce PCBs in stormwater runoff by implementing best management practices, including by modifying their MS4s, to

capture and manage stormwater *within their own jurisdictions*. Compl. ¶¶ 5–6, 12, 119. Overall, Defendants have not met their burden to show that "all pertinent events" related to the Municipalities' claims "t[ook] place on a federal enclave." *Suncor Energy*, 25 F.4th at 1271. Thus, the Court rejects Defendants' "overreaching approach to federal-question jurisdiction premised on [a] federal enclave[]." *BP P.L.C.*, 31 F.4th at 218.

**B. Fraudulent Joinder**

Defendants next argue that Univar, the only non-diverse defendant, was fraudulently joined. [22] at 9–13. While a "plaintiff typically may choose its own forum, [] it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur*, 577 F.3d at 763. Thus, in determining whether diversity exists, courts may disregard parties fraudulently joined. *Id.* ("The fraudulent joinder doctrine, therefore, permits a district court considering removal to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."); *see also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) ("In determining whether there is diversity of citizenship, parties fraudulently joined are disregarded.").

"To establish fraudulent joinder, a removing defendant 'must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (emphasis in original) (quoting *Poulos v. Naas Foods, Inc.*,

959 F.2d 68, 73 (7th Cir. 1992)). "A defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent." *Schur*, 577 F.3d at 764 (citation omitted). "In conducting this analysis, a district court must turn to state law to determine whether the plaintiff has any reasonable possibility of success." *Id.*; *see also Poulos*, 959 F.2d at 73 ("[T]he federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?").

The Distributor Statute "allows a defendant that is not a manufacturer of the allegedly defective product at issue in a strict liability action to seek dismissal after it accurately certifies the identity of the product's manufacturer." *Cassidy v. China Vitamins, LLC*, 120 N.E.3d 959, 964 (Ill. 2018). However, after dismissal, the trial court retains jurisdiction over the dismissed defendant and the dismissal may be vacated if the plaintiff is able to satisfy the enumerated criteria in the statute. *Id.* (citing 735 ILCS 5/2-621(b)(1)-(5)). For this reason, such a ruling is known as a "conditional dismissal." Additionally, the statute provides that "[a] court may not order dismissal . . . where a plaintiff shows that the distributor (1) participated in the design or manufacture of the product, (2) had actual knowledge of the defect in the product, or (3) created the defect in the product." *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d 926, 932 (N.D. Ill. 2012) (citing 735 ILCS 5/2-621(c)(1)-(3)).

As mentioned, the Municipalities bring six claims against all Defendants, including Univar, for claims arising out of the manufacture and sale of an allegedly defective product: (1) strict liability design defect, (2) negligent failure to warn, (3) negligence, (4) public nuisance, (5) private nuisance, and (6) trespass. Compl. ¶¶ 122–

65. Because the Distributor Statute only applies to strict liability claims, the Municipalities' five other claims are not subject to dismissal. *See Cassidy v. China Vitamins, LLC*, 89 N.E.3d 944, 955 (Ill. App. Ct. 2017) ("Negligent product liability claims are not strict liability claims and therefore are not subject to dismissal under section 2-621."), *aff'd on other grounds*, 120 N.E.3d 959 (Ill. 2018).

Defendants' arguments that the Municipalities five non-strict liability claims have "no reasonable possibility of success" falls flat. [22] at 10–11. Here, the Municipalities allege that Central Solvents, Univar's predecessor, was "one of the largest and most sophisticated chemical distributors in the country," and that Central Solvents had a years-long relationship with Monsanto as its distributor in the Chicago area. Compl. ¶¶ 26, 103–04. The Complaint also identifies the many public studies that were available regarding the health and environmental impacts of PCBs. *Id.* ¶¶ 52, 55, 63, 65, 66, 68, 70, 89. The Municipalities further allege that, due to its sophistication, Central Solvents "knew or should have known" about these public studies. *Id.* ¶ 104. These allegations do not permit the Court to conclude that the Municipalities non-strict liability claims have "no reasonable possibility of success." *Whelchel*, 850 F. Supp. 2d at 939–40; s*ee also Hawkins v. Boehringer Ingelheim Pharms., Inc.*, No. 20 C 6509, 2021 WL 4498652, at *3 (N.D. Ill. Jan. 19, 2021) (finding that "actual knowledge is a permissible inference from numerous scientific studies known within the pharmaceutical industry" to support negligence claim). In sum, the other five non-strict liability claims against Univar show that, even if the strict liability claim were dismissed, Univar would still be part of this lawsuit. *See*

*Whelchel*, 850 F. Supp. 2d at 936–37 (finding defendant had not established fraudulent joinder because "[e]ven if [the defendant] is entitled to dismissal of the strict liability claims under the Distributor Statute, [the defendant] may be properly named in [p]laintiff's claims of negligence").

**C. Federal Common Law**

Lastly, Defendants argue that the Municipalities' claims arise under federal common law and this case was properly removed under federal question jurisdiction. [22] at 13–15. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Complete preemption—an exception to the well-pleaded complaint rule—occurs only when "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption requires "a congressional intent in the enactment of a federal statute . . . to grant a defendant the ability to remove the adjudication of the cause of action to a federal court *by transforming the state cause of action into a federal cause of action*." *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787–88 (7th Cir. 2002) (internal quotation omitted); *see also Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213

(7th Cir. 2022) (complete preemption only occurs when a federal statute "creates an exclusive cause of action and sets forth procedures and remedies governing that cause of action").

Defendants argue that the Municipalities' claims are based, at least in part, on the alleged contamination of the interstate and navigable waters of Lake Michigan. [22] at 13–15. The Court disagrees. Defendants' reliance on the finding in *Illinois v. City of Milwaukee* that "'pollution of interstate or navigable waters" creates actions under 28 U.S.C. § 1331 is misplaced. 406 U.S. 91 (1972). In *City of Milwaukee*, the state of Illinois sued four cities in Wisconsin for sewage discharges into Lake Michigan. *Id.* at 93. While the Municipalities allege that the Lake Michigan TMDL was put in place because of contamination in Lake Michigan in particular, the Municipalities' claims do not involve any remediation or treatment of Lake Michigan or disputes with other states about the cleanup of Lake Michigan. Compl. ¶¶ 5–6. Again, the Municipalities seek damages to reduce PCBs in their own stormwater management programs. *Id.* ¶¶ 5–6, 12, 119. Like Defendants' federal enclave argument, the Municipalities' allegations do not align with the cases where federal common law has been held to be applicable. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) (federal common law applied where complaint discussed "effects of emissions made around the globe"); *Michigan v. U.S. Corps of Engineers*, 667 F.3d 765, 768 (7th Cir. 2011) (five states sued the U.S. Army Corps of Engineers over management of Great Lakes). Therefore, federal common law does not provide Defendants a basis for removal.

## IV. Conclusion

For the stated reasons, Plaintiffs' motion to remand [17] is granted. The Clerk's office is directed to remand this case forthwith to the Circuit Court of Cook County, Illinois. Civil case terminated.

E N T E R:

Dated: March 11, 2024

Mary M Rowland

MARY M. ROWLAND
United States District Judge